IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | § § § | |
| Plaintiff, | § § | |
| | § | Civil Action No. **3:21-cv-02184-L** |
| v. | § § | |
| **RUDY AVILA et al.,** | § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court are Plaintiff Commodity Futures Trading Commission's ("Plaintiff"):

(1)     Motion for Final Judgment by Default, Permanent Injunction, Civil Monetary Penalties, and Other Statutory and Equitable Relief ("First Motion") (Docs. 36), filed February 24, 2023, against Defendants Jose Rodolfo Avila Gutierrez ("Mr. Avila"); The L.I.F.T. Group ("LIFT Group"); Trading Technologies Group Sociedad Anomina ("Trading Group"); Trading Ventures Group, LLC ("Trading Ventures"); Capital Ventures Group, LLC ("Capital Ventures"); and Ventures Group, LLC ("Ventures Group"); and

(2)     Motion for Final Judgment by Default, Permanent Injunction, Civil Monetary Penalties, and Other Statutory and Equitable Relief ("Second Motion," and collectively with the First Motion, the "Motions") (Docs. 38), filed March 22, 2023, against CIG International Sociedad Anonima ("CIG International") (collectively, "Defendants").

After careful consideration of the Motions, briefs, record, and applicable law, the court **grants** the

Motions (Docs. 36, 38).

## I.     Factual and Procedural Background[1]

On September 14, 2021, Plaintiff brought this action asserting various claims for fraud

against Defendants, and additional violations of federal law against CIG International and Trading

---

[1] The facts before the court are complex, and Plaintiff's Complaint is incredibly detailed and specific. Accordingly, the court incorporates by reference the factual background in Plaintiff's Complaint as if repeated herein verbatim, and only provides a high-level summary of the facts to rule on the pending Motions.

Ventures for failing to register as Commodity Trading Advisors ("CTA"). Plaintiff alleges that Defendants engaged in two separate fraud schemes. Pl.'s Compl. ¶¶ 2-3 (Doc. 1).

In the first scheme (the "CIG Scheme"), occurring from 2017 through the spring of 2020, Plaintiff alleges that Mr. Avila, the LIFT Group, CIG International, and the Trading Group (the "CIG Defendants") fraudulently induced approximately 170 of their clients ("CIG clients") to invest at least $4.2 million into CIG Defendants' accounts to trade and return profit. *Id.* In the second scheme (the "TVG Scheme"), occurring from 2019 through April 19, 2021, Plaintiff alleges that Mr. Avila, Trading Ventures, Capital Ventures, and the Ventures Group (the "TVG Defendants") fraudulently induced approximately 55 clients ("TVG clients") to invest at least $1.8 million into TVG Defendants' accounts to trade and return profit. *Id.* Further, both CIG International and Trading Ventures used fraudulent traders, websites, e-mails, and related bank accounts to advise clients, manage their accounts, and trade on their behalf without registering with Plaintiff as a CTA, as required under the Commodity Exchange Act (the "Act") and Commission Regulations (the "Regulations"). Pl.'s Compl. ¶¶ 2, 73-76 (Doc. 1); Cazakoff Decl. ¶ 19 (Doc. 36-1).

Specifically, according to Plaintiff, Defendants told their clients that (1) the money would be invested "in commodity futures, options on commodity futures, and retail off-exchange foreign currency;" (2) clients would receive profits from the investments; and (3) they were United States based companies, the funds were controlled by United States based businesses, and the funds were maintained in United States bank accounts. Pl.'s Compl. ¶¶ 2-3. Instead, however, most of the clients' money was transferred to Defendants' personal bank accounts in Costa Rica or used to pay "fake profits" to other clients "in the manner of a Ponzi scheme." ¶ 4. As a result, CIG clients lost a total of $3.58 million, and TVG clients lost a total of $1.77 million. ¶ 6.

Accordingly, Plaintiff filed this action alleging that:

(1)    Defendants violated sections 4b and 4c of the Act[2], and sections 5.2(b) and 33.10 of the Regulation[3].

(2)    CIG International and Trading Ventures violated sections 4m and 4o of the Act[4] and section 5.3 of the Regulation[5].

(3)    CIG Defendants violated section 2(a) of the Act[6] and section 1.2 of the Regulation[7].

(4)    Mr. Avila violated section 13(b) of the Act[8].

Plaintiff seeks a permanent injunction, and an order requiring Defendants to make full restitution; pay civil monetary penalties in an amount not more than the penalty prescribed by 7 U.S.C. § 13a-1(d)(1) (2018); and pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2412(a)(2) (2018).

After Defendants were served and failed to answer or file responsive pleadings, Plaintiff moved for entry of default (Docs. 30, 33), and the clerk of court entered it that same day. Doc. 31 (Clerk's Entry of Default as to Defendants) (December 9, 2021); *see also* Doc. 34 (Clerk's *second* Entry of Default as to Capital Ventures) (August 25, 2022). On February 24, 2023, Plaintiff filed its First Motion, and on March 22, 2023 Plaintiff filed its Second Motion. To date, Defendants have not appeared in this civil action.

## II.    Default Judgment Standard

A default judgment is considered a drastic remedy that is not favored by the Federal Rules of Civil Procedure and resorted to only in extreme situations. *Lewis v. Lynn*, 236 F.3d 766,

---

[2] 7 U.S.C. §§ 6b(a)(1)(A)-(C), 6b(a)(2)(A)-(C) and 6(c).
[3] 17 C.F.R. § 5.2(b).
[4] 7 U.S.C. §§ 6m(1), 6o(1)(A)-(B).
[5] 17 C.F.R. § 5.3(a)(3).
[6] 7 U.S.C. § 2(a)(1)(B).
[7] 17 C.F.R. § 1.2.
[8] 7 U.S.C. § 13c(b).

767 (5th Cir. 2001). A party is not entitled to a default judgment as a matter of right, even when the defendant is technically in default. *Id.* Because it is preferrable to determine an action on the merits, courts resolve any doubt as to whether default should be entered in favor of hearing the case on the merits. *Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000).

A party is entitled to entry of a default by the clerk of the court if the opposing party fails to plead or otherwise defend as required by law. Fed. R. Civ. P. 55(a). Under Rule 55(a), a default must be entered before the court may enter a default judgment. *Id.*; *New York Life Ins. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). Once a defendant is in default, the court accepts as true all the well-pleaded facts set forth in the complaint aside from those relating to damages. *See Frame v. S-H, Inc.*, 967 F.2d 194, 205 (5th Cir. 1992) ("Unlike questions of actual damage, which must be proved in a default situation, conduct on which liability is based may be taken as true as a consequence of the default.") (citations omitted). A default judgment conclusively establishes a defendant's liability on the merits. *Leedo Cabinetry v. James Sales & Distrib.*, 157 F.3d 410, 414 (5th Cir. 1998) (citation omitted).

In failing to answer or otherwise respond to a plaintiff's complaint, a defendant admits the well-pleaded allegations of the complaint and is precluded from contesting the established facts on appeal. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (citations omitted). On the other hand, a "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 496 (5th Cir. 2015) (citation omitted). A default judgment may not be entered against an infant or incompetent person unless represented in the action by a general guardian, conservator, or other like fiduciary who has appeared. Fed. R. Civ. P. 55(b)(2). Likewise, a

default judgment may not be entered against an individual in military service until an attorney is appointed to represent the defendant. 50 U.S.C. § 3931.

## I.      Discussion

### A. Plaintiff has satisfied all procedural prerequisites for a default judgment.

#### 1.   Entry of Default

Summonses were returned executed as to Defendants, and the returns of service reflect that they were served in accordance with Federal Rule of Civil Procedure 4 and Article 5 of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters.  Docs. 23-29; *see also* Docs. 43-44; Doc. 36-1 ⁋⁋ 4, 6 (Cazakoff Decl.). Thereafter, Defendants did not file an answer or otherwise respond to Plaintiff's Complaint.  At Plaintiff's request, the clerk of court, therefore, entered default against Defendants.  Docs. 31, 34. Accordingly, the prerequisite that entry of default be entered has been satisfied.

#### 2.   Fitness of Mr. Avila as Defaulting Party

As noted, Plaintiff must establish, and the court must confirm that Defendants are not infants, incompetent persons, or persons in military service exempted from default judgment. Fed. R. Civ. P. 55(b)(2); 50 U.S.C. § 3931. This requirement only applies to Mr. Avila because the remaining Defendants are companies and limited liability companies and, thus, cannot be a minor, an incompetent person, or a current member of the military service. *See Barrett v. Tri-Coast Pharmacy, Inc.*, 518 F. Supp. 3d 810, 822 (D.N.J. 2021). Having considered Mr. Avila's sworn statement in his guilty plea in the related criminal action[9], the magistrate judge's findings

---

[9] The court also takes judicial notice of Mr. Avila's guilty plea and rearrangement in the related criminal action. *See United States v. Avila*, Docket No. 3:21-cr-00168-M-1 (N.D. Tex. 2021).

in the criminal action regarding his competency to enter his plea, his sentence of incarceration[10], and Plaintiff's attorney's sworn affidavit, the court finds that Mr. Avila is not a minor, incompetent person, or member of the United States military.

### B. Plaintiff's pleadings are sufficient to establish its claims.

As stated above, Plaintiff moves for default judgment on all of its claims. Specifically, Plaintiff moves for default against Defendants for violating:

### 7 U.S.C. §§ 6b(a)(1), (2)(A)-(C) (Contracts designed to defraud or mislead.)

It shall be unlawful—
(1) for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity in interstate commerce or for future delivery that is made, or to be made, on or subject to the rules of a designated contract market, for or on behalf of any other person;

(2) or for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery, or swap, that is made, or to be made, for or on behalf of, or with, any other person, other than on or subject to the rules of a designated contract market—

    (A) to cheat or defraud or attempt to cheat or defraud the other person;
    (B) willfully to make or cause to be made to the other person any false report or statement or willfully to enter or cause to be entered for the other person any false record;
    (C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for or, in the case of paragraph (2), with the other person.

### 7 U.S.C. § 6c(b) (Prohibited Transactions)

No person shall offer to enter into, enter into or confirm the execution of, any transaction involving any commodity regulated under this chapter which is of the character of, or is commonly known to the trade as, an "option", "privilege", "indemnity", "bid", "offer", "put", "call", "advance guaranty", or "decline guaranty", contrary to any rule, regulation, or order of the Commission prohibiting any such transaction or allowing any such transaction under such terms and conditions as the Commission shall prescribe. Any such order, rule, or regulation

---

[10] The court sentenced Mr. Avila to 120-months incarceration, three years of supervised release, and ordered him to pay restitution.

may be made only after notice and opportunity for hearing, and the Commission may set different terms and conditions for different markets.

### 17 C.F.R. § 5.2(b) (Prohibited Transactions)

Fraudulent conduct prohibited. It shall be unlawful for any person, by use of the mails or by any means or instrumentality of interstate commerce, directly or indirectly, in or in connection with any retail forex transaction:

> (1) To cheat or defraud or attempt to cheat or defraud any person;
> (2) Willfully to make or cause to be made to any person any false report or statement or cause to be entered for any person any false record; or
> (3) Willfully to deceive or attempt to deceive any person by any means whatsoever.

### 17 C.F.R. § 33.10 (Fraud in connection with commodity option transactions.)

It shall be unlawful for any person directly or indirectly:

(a) To cheat or defraud or attempt to cheat or defraud any other person;
(b) To make or cause to be made to any other person any false report or statement thereof or cause to be entered for any person any false record thereof;
(c) To deceive or attempt to deceive any other person by any means whatsoever

in or in connection with an offer to enter into, the entry into, the confirmation of the execution of, or the maintenance of, any commodity option transaction.

In addition, Plaintiff moves for default judgement against CIG International and Trading Ventures

for violating:

### 7 U.S.C. §§ 6o(1)(A)-(B) (Fraud and misrepresentation by commodity trading advisors, commodity pool operators, and associated persons.)

(1) It shall be unlawful for a commodity trading advisor, associated person of a commodity trading advisor, commodity pool operator, or associated person of a commodity pool operator, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly—

> (A) to employ any device, scheme, or artifice to defraud any client or participant or prospective client or participant; or
> (B) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or participant or prospective client or participant.

**17 C.F.R. § 5.3(a)(3) (Registration of persons engaged in retail forex transactions.)**

(a) Subject to paragraph (b) of this section, each of the following is subject to the registration provisions under the Act and to part 3 of this chapter:

[…]

(3)(i) Any commodity trading advisor, as defined in § 5.1(e)(1) of this part, is required to register as a commodity trading advisor;

(ii) Any associated person of a commodity trading advisor, as defined in § 5.1(e)(2) of this part, is required to register as an associated person of a commodity trading advisor;

Defendants, by failing to answer or otherwise respond to Plaintiff's Complaint, have admitted its well-pleaded allegations and are precluded from contesting the established facts on appeal. *Nishimatsu Constr. Co.*, 515 F.2d at 1206 (citations omitted). Stated differently, a "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Wooten*, 788 F.3d at 496 (citation omitted). Accordingly, Defendants may not contest the "sufficiency of the evidence" on appeal but are "entitled to contest the sufficiency of the complaint and its allegations to support the judgment." *Id.*

First, in further support of the Complaint, the court also takes judicial notice of Mr. Avila's related criminal action. *See United States v. Avila*, Docket No. 3:21-cr-00168-M-1 (N.D. Tex. 2021). In the criminal case, on April 8, 2021, Mr. Avila pled guilty to one count of wire fraud in violation of 18 U.S.C. § 1343 and admitted that he mailed fraudulent marketing material to clients on behalf of coconspirators, and engaged in and furthered both schemes, discussed herein, "by marketing, facilitating, owning, controlling, and/or operating" CIG International, the Trading Group, the LIFT Group, Trading Ventures, Commodity Ventures, and the Ventures Group. First Mot. 17. He also admitted that he concealed from Defendants' clients that he was using investment funds to make payments to other clients, and that he used client funds for unauthorized and

undisclosed expenses, including his personal and business expenditures. Pl.'s Compl. ¶¶ 69, 71; Cazakoff Decl. ¶ 15. Further, Mr. Avila admitted he falsely represented to investors that their investments funds were controlled and maintained in the United States, "when, in fact, [he] wired most of the money to an individual in Costa Rica." Pl.'s Compl. ¶ 70; Cazakoff Decl. ¶¶ 15. In addition to Mr. Avila's admissions, the facts alleged in the Complaint, supported by affidavits attached to the Motions, demonstrate that *instead* of trading the client funds as promised, Defendants "misappropriated client funds by making false material representations and misrepresentations and omissions to their clients[.]" First Mot. 15 (citing Pl.'s Compl. ¶¶ 3, 31, 34, 50, 73, 75; 95, 107, 118, 130; Cazakoff Decl. ¶¶ 15, 19). Accordingly, the well-pleaded allegations show that Defendants engaged in two separate Ponzi schemes.

Second, the well-pleaded allegations of Plaintiff's Complaint establish that:

> Defendants managed, exercised discretion, and traded their clients' individual [funds]. [T]here was no trading [however] and most clients' investments were misappropriated. To carry out their respective schemes and misappropriate their clients' investments, [ ] Defendants used websites containing false statements about the nature of their business; and used salespeople who falsely represented to clients that they opened, managed, and traded their individual client accounts[.] [D]efendants also falsely represented to their clients that their funds were safely held in U.S. companies in the U.S. when in fact [ ] Defendants wired most of their clients' funds to Costa Rica, and provided their clients with fake trading statements with fictitious trading gains and losses. [ ] Defendants also failed to disclose to their clients that they did not trade their individual accounts, as promised, and that they used certain of their clients' funds to pay other clients funds.

First Mot. 19-20 (citations omitted). Therefore, the well-pleaded allegations establish that Defendants committed fraud in violation of 7 U.S.C. §§ 6b(a)(1)(A)-(C), 6b(a)(2)(A)-(C), 6c(b) and 17 C.F.R. §§ 5.2(b), 33.10. In addition, the well-pleaded allegations establish that:

> [Trading Ventures and CIG International] engaged in its conduct as a CTA. Here, [Trading Ventures and CIG International], for compensation or profit, used the mails or any means of interstate commerce in connection with its business of advising, managing, and trading [ ] on behalf of its clients. [Trading Ventures and

CIG International] through its purported Traders, among other things, managed its client accounts and used its discretion to trade [ ] client funds.

*Id.* at 23 (citations omitted). Therefore, the well-pleaded allegations establish that Trading Ventures and CIG International committed fraud while acting as CTAs in violation of 7 U.S.C. § 6o(1) (A), (B); and failed to register as CTAs in violation of 7 U.S.C. § 6m(1) and 17 C.F.R. § 5.3(a)(3).

Accordingly, based on the well-pleaded allegations in Plaintiff's Complaint, which the court accepts as true, the evidence submitted by Plaintiff in support of its Motions, and the record in this action, the court determines that Defendants are in default, and that Plaintiff is entitled to a default judgment and appropriate damages.

### C. Damages

"A default judgment is a judgment on the merits that conclusively establishes the defendant's liability. But it does not establish the amount of damages." *United States v. Shipco Gen.*, 814 F.2d 1011, 1014 (5th Cir. 1987) (citation omitted). A hearing on damages is unnecessary "if the amount of damages can be determined with mathematical calculation by reference to the pleadings and supporting documents." *United States v. Garza*, No. 3:19-CV-0188-S, 2019 WL 4452147, at *4 (N.D. Tex. Aug. 22, 2019).  In its Motions, Plaintiff seeks permanent injunctive relief, restitution, and a civil monetary penalty.

First, the court finds that permanent injunctive relief is merited here. The statutory injunctive relief in 7 U.S.C. § 13a-1(a) is remedial in nature and is designed to prevent injury to the public and to deter future illegal conduct. Plaintiff is entitled to injunctive relief upon a showing that a violation has occurred and that there is a reasonable likelihood of future violations. *King*, 2007 WL 1321762, at *4 (citing *Hunt*, 591 F.2d at 1220 ("Given Defendants' past violations of the [Commodity Exchange Act], the Commission need only show 'that there is some reasonable

likelihood of future violations' to be entitled to injunctive relief."). In determining whether a "reasonable likelihood" of future violations exists, courts generally consider the egregiousness of the defendant's actions; the isolated, recurrent, or systematic nature of the violations; the degree of scienter involved; the defendant's recognition of the wrongfulness of the conduct; and the likelihood that the defendant's customary business activities will present opportunities for future violations. *See SEC v. Gann*, 565 F.3d 932, 940 (5th Cir. 2009); *SEC v. Blatt*, 583 F.2d 1325, 1334 n.29 (5th Cir. 1978).

Here, Defendants repeatedly and deliberately violated core provisions of the Act and Regulation and engaged in two separate but related multi-year Ponzi schemes resulting in the misappropriation of millions of dollars from hundreds of clients. *See* Pl.'s Compl. ¶¶ 1-6, 24-48, 49-65, 66-72; Mr. Cazakoff Decl. ¶ 19 (Statement of Damages). As accurately stated by Plaintiffs, the facts alleged and Mr. Avila's admissions in his guilty plea "demonstrate a high level of scienter and egregious fraud and a reasonable likelihood of future violations that warrant the imposition of a permanent injunction, including trading and registration bans." First Mot. 19. Accordingly, the court **grants** Plaintiff's request for a permanent injunction. The details of the permanent injunction will be provided by separate order.

Second, restitution is also both applicable and appropriate in this case. 7 U.S.C § 13a-1(d)(3)(A). Section 13a-1(d)(3)(A) authorizes Plaintiff to seek, and the court to order, "restitution to persons who have sustained losses proximately caused by [a] violation [of the Act or Regulation] (in the amount of such losses)." Restitution exists to restore the status quo and make the injured party whole. *Porter v. Warner Holding Co.*, 328 U.S. 395, 402 (1946) (equitable restitution consists of "restoring the status quo and ordering the return of that which rightfully belongs to the purchaser or tenant"). Accordingly, courts calculate restitution as the difference between what

Defendants obtained and the amount their clients have already received back. Further, as stated above, an inquest or hearing into damages is unnecessary if affidavits or documentary evidence provided to the court are used to determine the appropriate sum of damages. *James v. Frame*, 6 F.3d 307, 311 (5th Cir. 1993) (damages "could be computed with certainty by reference to the pleadings and supporting documents alone, rendering an evidentiary hearing unnecessary").

Here, the restitution owed by the CIG Defendants in the CIG Scheme totals $3,626,751.90, computed as the total amount invested by their clients, less any funds returned. Cazakoff Decl. ¶ 19 (Statement of Damages). The restitution obligation by the TVG Defendants in the TVG Scheme totals $1,814,720.41, computed as the total amount invested by their clients, less any funds returned. *Id.* Accordingly, the CIG Defendants are **ordered** to pay restitution jointly and severally in the amount of $3,626,751.90, plus postjudgment interest; and the TVG Defendants are **ordered** to pay restitution jointly and severally in the amount of $1,814,720.41, plus postjudgment interest. Further, as requested by Plaintiff, the court **appoints** National Futures Association as Monitor to collect restitution payments from Defendants and distribute such payments to their clients.

Finally, the court determines that the LIFT Group, the Trading Group, Trading Ventures, Commodity Ventures, the Ventures Group, and CIG International should be ordered to pay a civil monetary penalty in the amount of $214,514 per violation. *See* 7 U.S.C. § 13a–1(d)(1) (2018) (stating that the court has authority to impose, on any person found to have committed any violation of the Act, a civil monetary penalty in the amount of not more than the greater of the statutory prescribed amount of $214,514 per violation or triple the monetary gain to the person for each violation); 17 C.F.R. § 143.8(b)(1) (same). Accordingly, the LIFT Group, the Trading Group, Commodity Ventures, and the Ventures Group are each **ordered** to pay a civil monetary penalty in the amount of $429,028 for their conduct set forth in Counts I and II of the

Complaint. Trading Ventures and CIG International are **ordered** to pay a civil monetary penalty in the amount of $858,056 for their conduct set forth in Counts I, II, III and IV of the Complaint.

## III.    Conclusion

For the reasons stated, the court **grants** Plaintiff's Motions against Defendants. The court will issue a default judgment by separate document against Defendants as required by Federal Rule of Civil Procedure 58.

**It is so ordered** this 1st day of August, 2024.

Sam A. Lindsay
United States District Judge